ANDERSON, Respondent, v. FARMERS' CO-OPERATIVE SHIPPING & ELEVATOR COMPANY, Appellant.

(136 N. W. 1123.)

1. **Sales—Storage—Evidence—Bailment.**

In replevin to recover wheat alleged to have been stored with an elevator company, evidence as to whether the elevator company stored wheat for anybody or was engaged in grain storage business for anybody at any time was material upon the issue of whether plaintiff sold his wheat to, or merely stored it with the elevator company.

2. **Evidence—Opinion—Storage, or Sale, Tickets—Presumption.**

Where tickets delivered to plaintiff by an elevator company on his delivery of wheat to the company, are not storage receipts such as required under Sec. 494, Pol. Code, and are silent as to whether or not the grain was delivered for storage or sale, **held,** that in replevin of the wheat as having been stored, testimony of a witness as to what function the tickets given plaintiff were supposed to perform and what they were for, was not incompetent as the conclusion of witness; that whether the delivery was for storage or sale is determined

from all surrounding circumstances and from intention of parties; it cannot be conclusively presumed there was a bailment in this case.

(Opinion filed, June 25, 1912.)

Appeal from Circuit Court, Douglas County. Hon. R. B. TRIPP, Judge.

Action by Gust Anderson against Farmers' Co-operative Shipping & Elevator Company, in replevin for wheat alleged to have been stored. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and remanded for new trial.

*Conner & Lally,* and *John W. Addie,* for Appellant.

A. Either the court treated Exhibits "E" to "R" as warehouse receipts under section 487 of the Political 1908 Code of South Dakota, found on page 134, Vol. 1, Compiled Laws, and in this case, the surrender of the alleged receipts properly endorsed and the tender of the proper charges is made a condition precedent to plaintiff's right to recover by section 488 Political 1908 Code of South Dakota, to warrant this in view of the utterly unintelligible, indeed-blankly inexpressive context of the exhibits it must be made to appear that both plaintiff and defendant treated exhibits "E" to "R" as good-faith warehouse receipts for the return of the wheat delivered by plaintiff to it from August to October 9, 1909, or its equivalent in quality and quantity—and

B. If the trial court considered sections 494, 495, and 496 as authority for its directing the verdict, it must to its own satisfaction have decided, without a word of evidence on which to base it, that the defendant was in August to October—both inclusive—"doing a grain warehouse or grain elevator storage business" and that the weight-tickets (Exhibits "E" to "R") were "receipts issued" for the 63,460 pounds of wheat delivered to defendant's elevator from August 22nd to October 9th, 1909, "providing for a delivery of a like kind, amount and grade to the holder hereof in return" for said wheat.

If under the three last cited sections plaintiff is equally "up against a stone wall" because the issuing of the receipt in the manner and form as prescribed by section four hundred ninety-

four (494) Political Code is the very basis on which rest the provisions of the three following sections, 495, 496, and 497.

There is no evidence at all that the wheat was delivered to defendant for storage under the provisions of Chapter eight (8) Political (1908) Code of South Dakota.

There is no evidence,—not a word, that the weight-tickets,—exhibits "E" to "R" were received by plaintiff or issued by defendant as receipts for wheat delivered to the defendant for storage or for any other purpose. Plaintiff had them was asked to produce on his cross-examination (Ab. p. 26) and were by defendant offered in evidence as a part of plaintiff's cross-examination (Ab. p. 28).

They were neither endorsed (Ab. p. 29) as they must be if taken under section 487 and returned under section 488 Political Code (1908) of South Dakota to entitle plaintiff to recover, nor in any wise whatever do they comply with the imperative and mandatory provisions of sections four hundred ninety-four to four hundred ninety-seven (494 to 497) of the Political Code (1908) of South Dakota, and so we think there is neither authority nor reason on which the court could find they are warehouse receipts for wheat placed in storage and hence erroneously directed a verdict for the plaintiff.

"What functions are exhibits "E" to "R" supposed to perform?"

"What is the purpose of exhibits "E" to "R" being brought to your office?"

Was the evidence sought to be elicited by each of these questions relevant? Evidence is relevant when it touches upon the issues, made by the pleadings, so as to assist in getting at the truth of the facts disputed. Evidence is material when it goes to the substantial matters in dispute or has a legitimate bearing on the decision in the case, and it is competent when it is what the very nature of the thing to be proven requires, 16 Cyc., p. 848.

The contention of the plaintiff is that he delivered to the defendant and placed in its warehouse in Armour in storage 63,-460 pounds of wheat from August 22nd or 25th to October 6th, 1909. It is defendant's contention that he did not do so, that

no wheat was delivered to it by plaintiff nor by it received for storage purposes.    This issue was squarely raised by the pleadings.

If plaintiff who in fact received from defendant only such as he would have received in a conceded sale to and purchase by defendant from him of this identical wheat, be allowed to put his own construction on the transaction, and call the transaction a bailment, may not the defendant be allowed to show that it received no wheat from the plaintiff for storage?    Must it be precluded from showing the court and jury that it did not do a storage business, did not receive grain on storage from plaintiff, nor from any one; that it would not in fact take the wheat at all from plaintiff if offered for storage?

Both the president and manager of the defendant company were thus prevented by the court from in fact rebutting plaintiff's testimony on plaintiff's main claim (Ab. pp. 33, 34, 36, 43), also from showing the method of dealing between plaintiff and defendant in 1908 and 1909 were identical (Ab. p. 35).    Nay, more than this, defendant's manager was not allowed to give his understanding of the transaction when asked how he regarded it, whether it was a sale of wheat or a storage of it to be returned to Mr. Anderson on demand, the court held the questions to be leading and calling for a conclusion.    (Ab. p. 36, 22nd error assigned).    We insist the court erred, and believe we are sustained in principle by:  Shrimpton v. Brice, 109 Ala. 640, 20 So. 10; Cofer v. Scroggins, 39 Am. St. R. 54, 98 Ala. 342; Tate v. Fratt, 112 Cal. 613, 44 Pac. 1061; Reynolds v. Simpson, 74 Ga. 454; Harvesting Machine Co. v. Burandt, 136 Ill. 120; Packet Co. v. Bridge Association, 38 Ill. 467; Golwart v. Sullivan, 30 Ind. App. 428, 66 N. E. 1186; Coldren v. LeGore, 118 Iowa, 212, 91 N. W. 1060; State v. Brundage, 118 Iowa, 92, 91 N. W. 920; see further 17 Cyc., p. 216, and authorities cited; see 20 Cent. Dig. tit. Evidence, §2149 et seq; see Cyc. annotations 1901-1911, p. 2315, under heading 17 Cyc. 216, note 56, where all the late authorities are collected, including Hawley v. Bond, 20 S. D. 215, 105 N. W. 464; and Reeves v. Railway Co., (S. D.) 123 N. W. 498.

Indeed we think the fact that exhibit "F" and exhibits "E" to "R" are of such notorious recognition and utility as weight tickets that the court should take judicial notice of that fact. See Cyc. 16, pp. 852, 873, 878; 20 Cent. Dig. tit. Evid., §§ 2, 4, 20; 8 Dec. Dig. tit. Evid., § 20; State v. Metcalf, 18 S. D. 393, 100 N. W. 923, 67 L. R. A. 331; 12 Am. & Eng. Annt. Cas., p. 430, where the recent authorities are collected.

*E. P. Wanzer,* for Respondent.

Our contention is:

1. That the defendant was a public warehouse, under the provisions of section 483 P. C.

2. That the wheat delivered at such warehouse by plaintiff was delivered for storage purposes only, and that the receipts or tickets received by plaintiff were in fact warehouse receipts therefor.

3. That the plaintiff never at any time sold his wheat to the defendant elevator company.

4. That not having sold his wheat to the defendant, the plaintiff was entitled to recover possession of the same.

The statute does not prescribe any particular form of warehouse receipt. The undisputed evidence showed that the wheat was delivered and the plaintiff received these tickets and nothing else at the time of such delivery. True the statute requires these tickets to be numbered and to furnish some other data which the exhibits in this case do not disclose, but we contend that the defendant cannot take advantage of its own failure to comply with the law. They were substantially warehouse receipts and the trial court so construed them. It is true they were not delivered to defendant before the suit was brought. It is not claimed that if they had been tendered properly endorsed, that the wheat would then have been delivered.

Much stress is laid upon the fact, that those tickets, exhibits "E" to "R", are not in the form of a receipt and are not called receipts. It is very evident the legislature had in mind anything in the nature of a receipt or ticket, as is clearly indicated by the language used in section 498, where they are referred to as "receipts or tickets." The mere fact that they do not happen to be in the form of receipt, therefore, becomes entirely immaterial.

Again reverting to the question of receipts or tickets, Exhibits "E" to "R": It is a well settled rule that "parol evidence is admissible to show whether the transaction was a bailment or sale if the receipt is ambiguous." Am. & Eng. Enc. Vol. 30, p. 78. Therefore, while the receipts or tickets are perhaps not all that counsel for appellant might desire, yet in connection with the undisputed evidence in the case, showing how the wheat was delivered, the different conversations in regard to it and the fact that there never was at any time any sale, the only conclusion to be reached is a bailment. Counsel for appellant, nowhere in their voluminous brief, cite or call attention to any time or transaction when they claim that the plaintiff sold his wheat to the defendant.

McCOY, P. J.  This is an action in replevin brought by plaintiff to recover from defendant the possession of 63,460 pounds of wheat claimed to have been wrongfully detained from plaintiff by defendant. Verdict was directed for plaintiff and judgment thereon, from which defendant apueals, assigning various errors.

Defendant is a corporation operating a public grain warehouse or elevator at Armour. Plaintiff is a stockholder of defendant. Between August 25 and October 15, 1909, plaintiff delivered to defendant at its elevator 63,460 pounds of wheat, consisting of 14 wagon loads. At the time of the delivery of each load, defendant delivered to plaintiff a ticket or paper, indicating the number of pounds delivered, one of which tickets is as follows:

Weighed on Fairbank Scales.

8|28, 1909.

Load of B. S. Wheat.
From G. Anderson.
To ————.
Gross,  5,480 lbs.
Tare,   1,340 lbs.
Net,    4,140 lbs.

P. R. Judge, Weigher.

All said tickets were substantially the same in form. It was the contention of plaintiff on the trial that he delivered said wheat to defendant to be stored; while defendant, on the other hand,

contended that it purchased said wheat, that said wheat was delivered to defendant for the purpose of sale and not for storage. Plaintiff testified that during the time he was delivering said wheat he had a conversation with the manager of defendant, and asked him what wheat was worth, and that said manager replied, "I can give you 91 cents for the wheat," and "I told him it was all right, but I did not want to sell until I got it all drawn in, and then, whatever the market was, whether higher, or lower, I would take the price at what it was." About October 30th following plaintiff appeared at the elevator for settlement, and defendant's manager told him he would give him 91 cents for the wheat. Plaintiff told him he would not take 91 cents; that the market was better than that, and that he could get 93 cents for it; that, if he could not get what his wheat was worth, he would take it out. Defendant's manager refused to pay more than 91 cents, and also refused to permit plaintiff to take the same number of pounds of wheat from defendant's elevator. Defendant's manager testified that plaintiff sold him said wheat.

[1] While on the witness stand as a witness for defendant the manager was asked the following questions: "Tell the jury whether or not the Farmers' Elevator Company at Armour stored wheat for anybody? Was the Farmers' Elevator, the defendant in this case, in the business of storing grain for anybody at any time?" Both these questions were objected to as immaterial, and both objections sustained.

[2] In relation to the 14 tickets showing the weights, the same witness, on direct examination, was asked: "What function are they supposed to perform? What are they for?" This question was objected to as incompetent and calling for the conclusion of the witness, and the objection was sustained. To all said rulings of the court and to many others of the same import defendant duly excepted, and now urges such rulings as error. We are of the opinion that appellant is right in this contention. It will be observed that the tickets delivered to plaintiff showing the weights were not storage receipts such as are required to be issued and delivered under section 494, Pol. Code. The tickets issued and delivered to plaintiff are silent as to whether or not

the grain was delivered for the purpose of sale or storage. These tickets, if they indicate anything in that respect, indicate a sale rather than storage. It is a matter of common knowledge that such tickets are used as memoranda to keep track of the amounts, and the times when delivered, of grain sold. The testimony of plaintiff would seem to indicate he delivered the grain for the purposes of sale, the price to be fixed as of the date when he completed the delivery, and that he did not change his mind until defendant's manager refused to give him 93 cents per bushel on October 30th, some 15 days after he completed his delivery. If defendant had issued and delivered to plaintiff storage receipts providing for a delivery of a like kind, amount, and grade to the holder thereof in return for such receipts, as is provided by section 494, Pol. Code, then the contract and relationship of bailment would have been created, and defendant would not be permitted to deny such bailment; but we are inclined to the view that such conclusive bailment cannot be created in any other manner than as provided by this section of the Code. We do not desire to be understood as holding that the use of such tickets, as used in this case, would conclusively show a sale, or that ordinary rebuttable bailment arises or could not be created by the use of such tickets, but we are of the opinion, under circumstances like those in this case, that whether or not the delivery of grain to an elevator for the purposes of sale or storage must be determined from all the surrounding cirmustances and from the intention of the parties at the time the delivery was made, and that it cannot be conclusively presumed there was a bailment under the circumstances of this case. Whether or not defendant stored wheat generally for its patrons and stockholders was a circumstance that might properly have been taken into consideration by the jury in determining the reasonableness of the claims of the contending parties, and also as affecting credibility and weight to be given to the testimony of the opposing witness on the question as to whether or not the wheat was delivered for storage or sale.

It was proper for the manager to explain, as a part of the surrounding circumstances, the use or purpose of the tickets. Under the view we take of the admissibility of the above referred

to evidence it is not necessary to refer to or consider other assignments of error.

The judgment and order denying a new trial are reversed, a new trial ordered, and the cause remanded.